IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE ESTATE OF MARY SUE WELSH, | * | |
| C/O MARTIN EUGENE WELSH, P.R. | * | |
| | * | |
| v. | * | Civil Action No. CCB-19-988 |
| | * | |
| MICHAELS STORES, INC. | * | |
| | ****** | |

**MEMORANDUM**

Pending before the court are the Estate of Mary Sue Welsh ("the Estate")'s motions to remand the case to state court (ECF 92) and to exclude Michaels Stores, Inc. ("Michaels")'s expert witness, (ECF 113), and Michaels' motion for summary judgment (ECF 94). The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the court will deny the motion to remand and the motion to exclude Michaels' expert, and grant Michaels' motion for summary judgment.

**I.      Motion to Remand**

   **a. Background**

In 2016, Mary Sue Welsh allegedly tripped and fell at a Michaels store located in the Snowden Square Shopping Center at 9041 Snowden River Parkway in Howard County, Maryland, because of an uneven floor tile. On February 14, 2019, through her Estate,[1] Welsh filed a negligence claim under Maryland state law against Michaels Stores, Inc.; The Michaels Companies, Inc.; Kimco Realty Corp. ("Kimco"); and Snowden 156, LLC ("Snowden").[2] The

---

[1] As explained in the court's earlier memorandum concerning its jurisdiction in this case, Ms. Welsh is deceased, but her death is not alleged to be related to injuries suffered in the fall. (ECF 36 at 1).

[2] The Michaels Companies, Inc. has been dismissed and summary judgment has already been awarded to Snowden, without opposition. (ECFs 12, 24, 36).

1

defendants timely removed the case to this court, and plaintiff filed an earlier motion to remand this case on the ground that Kimco, a Maryland corporation, was not a diverse party. (ECF 11). Michaels opposed the motion, claiming that the Estate had fraudulently joined Kimco or that Kimco was a nominal party. (ECF 21). The court found that the claims against Kimco were based on the Estate's potential factual misunderstanding regarding Kimco's ownership interest in the Snowden Square Shopping Center and the possibility that though Kimco did not own the Michaels property, it may have assumed duties with respect to the maintenance or financial obligations of the Michaels property. The court found that "as the Estate has so far alleged no basis for holding that Kimco owed Welsh a duty, the Estate has not shown any possibility of success against Kimco," but denied the motion to remand without prejudice, and allowed the parties to "conduct limited jurisdictional discovery and/or to allow the Estate to file an amended complaint." (ECF 36 at 3).

Thereafter, the Estate filed an amended complaint, in which it admitted that Kimco does not own the Michaels store (ECF 54 ¶ 5). Michaels answered (ECF 58) and Kimco moved to dismiss for failure to state a claim (ECF 60). On August 18, 2020, after Kimco's motion was fully briefed, the Estate and Kimco stipulated to the dismissal, with prejudice, of all claims against Kimco. (ECF 80; *see also* ECF 81, Marginal Order approving dismissal). The motion to dismiss was denied as moot. (ECF 82).

Approximately one month later, the Estate filed the instant motion to remand, alleging that Kimco did in fact own and manage all the premises where Welsh fell, and arguing that this court should return the case to the Circuit Court for Howard County for lack of diversity jurisdiction. (ECF 92). As it did before, Michaels asserts that Kimco's joinder to this action was fraudulent and the court retains diversity jurisdiction, as Michaels is a citizen of Delaware and

Texas and the Estate is a citizen of Maryland. (ECF 95).[3]

    b. Discussion

To establish fraudulent joinder, Michaels must "show either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (internal quotation marks and citations omitted) (emphasis in original). The latter basis for finding fraudulent joinder requires that the removing party demonstrate that "the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor," a burden which is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)).

The Estate's renewed motion for remand does not persuade the court to alter its earlier conclusion that Michaels has satisfied that heavy burden. The Estate's continued assertions that Kimco is the owner or property manager of the Michaels store contradict all evidence before the court and the Estate's own amended complaint, which explicitly admits that JLPK-Columbia LLC, a subsidiary of Kimco, "is the titled owner of the property."[4] (ECF 54 ¶ 5). The Estate argues that Kimco's corporate designee, Paul Dooley, admitted in his deposition that Kimco has assumed a duty as the property manager of the Michaels store and can enter the building because Kimco owns the building. The Estate does not attach to its motion the relevant pages of Dooley's

---

[3] The parties do not dispute that the amount in controversy exceeds $75,000.

[4] The Estate nonetheless maintains in this motion and in the amended complaint that Kimco owed a duty to Ms. Welsh as an "equitable owner" of the Michaels store. (*See* ECF 54 ¶ 5). As explained in the court's memorandum concerning the first motion to remand, the Estate has never explained this claim, nor has it provided any case law in support of it. (*See* ECF 36 at 2–3).

testimony in which he allegedly makes these statements, and the excerpts of his deposition that are in the record do not contain them. Rather, Dooley testified that JLPK-Columbia owns the Michaels property (ECF 102-2, Dooley Dep. 37:4–9) and that Kimco "operating on behalf of JLPK" maintains the *exterior* of the property (ECF 65-3, Dooley Dep. 49:18–50:1). The record further contains the entire lease agreement between JLPK and Michaels, which states that the tenant, Michaels, is responsible for the maintenance of the interior of the premises, where Ms. Welsh fell. (ECF 60-3 at 20). Moreover, the Estate's voluntary dismissal of its claims against Kimco because, in the Estate's own words, "the evidence did not support a cause of action against Kimco on all the discovery done" (ECF 104, Estate Reply at 5) further supports the court's conclusion that there is no possibility the Estate could have established a claim against Kimco, the only nondiverse party. Accordingly, the court will deny the Estate's second motion to remand.

## II. Motion for Summary Judgment and Motion to Exclude Expert

### a. Background

The Estate claims that Michaels negligently maintained the flooring near the entryway to its store, causing Welsh to fall and sustain injuries. On February 29, 2016, Welsh fell inside Michaels, near the front door, while shopping at the store. A Michaels employee, Suzanne Williams, saw Welsh fall to the floor, apparently while pushing an empty cart. (ECF 94-8, Williams Dep. 12:10–21). Williams and Michael Edwards, the store's manager, approached Welsh, and helped her from the floor and into a seat. (*Id.* 14:1–6). Edwards and Williams asked if Welsh wanted them to call an ambulance; she refused the offer. (*Id.* 15:15–17; 17:4–6). At Welsh's request, a Michaels' employee called Welsh's son, Patrick Welsh. (ECF 94-3, P. Welsh Dep. 18:12–19:6). Patrick took Welsh to her primary care physician and later that day Welsh's

daughter, Erin Welsh, took Welsh to the Emergency Department at Howard General Hospital. (ECF 94-3, P. Welsh Dep. 28:10–14; ECF 94-4, E. Welsh Dep. 37:8–14).

Medical records from Howard General Hospital indicate Welsh sustained injuries, including a fractured humerus, bruises above and around her right shoulder, and pain in her right wrist. (ECF 94-7 at 2). During her treatment, Welsh told Howard General Hospital staff that she could not recall her fall and was unsure if she passed out or if she tripped. (*Id.* at 2). Welsh also told both Williams and Patrick that she did not know how she had fallen. (ECF 94-8, Williams Dep. 16:8–11, 57:12–14; ECF 94-3, P. Welsh Dep. 29:10–18). No other witness to the fall has been able to identify why Welsh fell and there is no evidence that any person saw Welsh's feet when she fell. (ECF 94-8, Williams Dep. 24:8–9, 57:5–7).

In their depositions, Patrick and Erin testified that on the day after Welsh's fall, they went to the Michaels store together. They approached a woman behind the counter, who they assumed to be a cashier, and told the woman that their mother had fallen at the store a day earlier. (ECF 102-2, E. Welsh Dep. 59:5–11). The woman remembered Welsh and claimed to be the store employee who assisted Welsh after her fall. (*Id.* 59:9–16). Erin and Patrick asked where their mother fell. The woman took them to an area near the store's entrance. (*Id.* 59:17–20; 70:1–19). According to Erin, the floor area the woman showed them had tiles that "weren't flat and level. They were wavy in an up-and-down way[.]" (*Id.* 72:1–2). Patrick and Erin asked the woman if they could speak to the store's manager. The woman left and returned a few minutes later with a male employee. (*Id.* 60:3–8). The male employee took Patrick and Erin to his office, where he showed them the store's video surveillance of the area of Welsh's fall on the day she fell. The fall appears to have occurred out of range of the video camera. (*Id.* 60:9–61:3). Patrick and Erin claimed that both employees told them that other people had fallen at the area where Welsh fell

and that the same area was supposed to be fixed weeks prior to Welsh's fall. (ECF 102-2, E. Welsh Dep. 61:5–8, 93:9–15, P. Welsh Dep. 24:3–25:3, 40:10–15).

Williams did not notice any uneven or wavy flooring at or near the spot where Welsh fell either before or after the incident and testified that she would have reported any hazardous conditions about which she knew. (ECF 94-8, Williams Dep. 17:7–14, 19:12–14, 50:20–51:3). She also testified that she did not talk to either Patrick or Erin about whether repairs were needed on the flooring where Welsh fell, that she was not aware of any planned repairs or a need for such repairs,[5] and that she was not aware of any other person falling at the location where Welsh fell. (*Id.* 19:3–11, 28:3–17, 58:19–59:6).

Apart from recalling the name "Welsh," Edwards does not remember Welsh's fall nor the occurrence of any subsequent conversations with her children. (ECF 102-2, Edwards Dep. 31:2–4, 37:13–14; ECF 94-9, Edwards Dep. 14:10–17). He did not recall any person slipping and falling at the store during his tenure there. (ECF 102-2, Edwards Dep. 30:4–9). Edwards was not aware of any safety hazard associated with the flooring near the entrance of the store or any repairs of a hazardous condition. Instead, he described the replacement of cracked flooring tiles, after Welsh's fall, for cosmetic, rather than safety reasons. (*Id.* 35:3–20).

Michaels retained engineer Benjamin T. Irwin to inspect the tile floor inside the store and provide a report and testimony as to the condition of the floor. (*See* ECF 94-10, Defendant's Designation of Expert Witness, at 1–3). Irwin inspected the floor on December 27, 2019, interviewed store staff members, and reviewed the Estate's complaint, photographs of the floor, and other documents. (ECF 94-10, Irwin Rep. at 1–4). Irwin found that some tiles near the area

---

[5] Williams was aware that the store had planned to replace some tiles "purely for cosmetic reasons." (ECF 94-8, Williams Dep. 19:7–11). It is not clear whether she knew of those plans at the time of Welsh's accident.

where Welsh fell were replaced in October 2016, and that photographs of the area taken both before and after the replacement showed visible cracks and downward displacements, or troughs, in the tile. (*Id.* at 3). His inspection concluded that "[t]he trough depths . . . varied with none exceeding 1/4 inch in downward depth. None of the tiles were loose or unstable under foot or to the touch by hand. No upward displacements or 'mounds' were observed[.]" (*Id.*). Similar downward displacements were found in other areas of the store, and the displacements in the tile aligned with downward displacements and cracking in the underlying concrete flooring. (*Id.*) Irwin opined that "[e]levated moisture levels at the crack locations [are] correlated in the exposed concrete, the replaced [tiles], and the non-replaced [tiles]," and that there is no evidence that the moisture had created upward mounds or displacements greater than 1/4 inch. (*Id.* 6–7). He determined that the tile near the store's entrance complied with Americans with Disabilities Act Standards and the American Society for Testing and Materials (ASTM) standards for safe walking surfaces, and concluded that the conditions present at the time of Welsh's fall were not unreasonably unsafe. (*Id.* 7–8). The Estate has not retained an expert in this matter.

    b. **Motion to Exclude Expert**

After the briefing of Michaels' motion for summary judgment was complete, the Estate moved to preclude Irwin from testifying at trial, on the ground that Michaels violated Fed. R. Civ. P. 26(a)(2)(B)(ii) when it failed to produce along with Irwin's report all the documents on which Irwin relies. (ECF 113). Specifically, Michaels did not produce a work order for the October 2016 replacement of tiling at the store which Irwin reviewed in making his report. (*See id.* at 2; ECF 94-10, Irwin Rep. at 3). Michaels argues that because it relies on Irwin's report in support of its motion for summary judgment and the Estate failed to present arguments for excluding Irwin's testimony in opposing summary judgment, the Estate has abandoned the issue

...

...

at the summary judgment stage. *See Mann v. United States*, 364 F. Supp. 3d 553, 565 (D. Md. 2019) ("failure to oppose a basis for summary judgment constitutes waiver of that argument") (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009)).

It is not clear to the court that the Estate seeks to exclude Irwin's expert report from the record on summary judgment; rather the Estate seems to seek relief in the form of precluding Irwin from testifying at trial. Even assuming, for the sake of discussion, that the Estate had properly moved to exclude Irwin's testimony from consideration on summary judgment, exclusion would not be warranted.

If a party "fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has explained that:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Under Federal Rule of Civil Procedure 26(a)(2)(B)(ii), the written expert report of an expert who may testify must include "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(ii). The requirement is to be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment. Michaels argues that Rule 26(a)(2)(B)

8

requires only disclosure, and not production, of all documents on which an expert relies in preparing his report, and thus its disclosure that Irwin considered the work order is sufficient. Michaels is correct that while Rule 26(a)(2)(B) is intended to allow the parties to "be able to discover not only what an opposing expert's opinions are, but also . . . what was considered in doing so," *Musselman v. Phillips*, 176 F.R.D. 194, 200 (D. Md. 1997), the actual materials considered by the expert are often more properly the subject of fact discovery under Fed. R. Civ. P. 34, *see, e.g.*, *Gore v. 3M Co.*, No. 5:16-CV-716-BR, 2017 WL 5076021, *2 (E.D.N.C. Nov. 3, 2017) (citing *Ark. Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 429–31 (Ct. Fed. Cl. 2006).[6] The court nonetheless finds it unnecessary to determine whether the work order should have been produced in either fact or expert discovery as any failure to make the work order available to the Estate was harmless under the *Southern States* factors.

    Michaels' explanation for its failure to produce the work order is that it was never requested to do so. This contention has merit. The Estate has made no effort in this litigation to obtain the work order information, though it had ample opportunity to do so both before and after Michaels' expert disclosure. In its reply brief, the Estate claims to have sought records of repairs to the floor in fact discovery, records which Michaels allegedly refused to provide. The Estate fails to attach to its motion those alleged discovery requests and fails to explain why, if it believed Michaels to be withholding discoverable documents, it did not seek to compel disclosure under Fed. R. Civ. P. 37(a). The Estate also had plenty of time to request any underlying information Irwin considered in making his report, as Michaels made its expert disclosure more than six weeks before the close of discovery. (*See* ECF 94-10, Defendant's

---

[6] Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

Designation of Expert Witness, dated July 21, 2020). Moreover, the Estate cannot claim to have been surprised at the disclosure of the existence of the work order; it was well known to the parties that the store replaced some flooring tiles after Welsh's fall. (*See, e.g.*, 94-9, Edwards Dep. 35:3–16). Finally, Irwin's report is important to Michaels' claim that the store did not contain an unreasonably dangerous condition, and allowing the report causes no disruption to the trial, which has not been scheduled.

    c. **Motion for Summary Judgment**

        i. **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d

514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### ii. Discussion

To succeed on a claim of negligence in Maryland, "the plaintiff must prove: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014) (internal quotation marks and citations omitted). The duty of an owner or occupier of real property to protect a person entering that property from injury "varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser." *Id.* at 561. Michaels concedes that it owed a duty to Welsh as a business invitor; the store was required to use reasonable care to "protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Id.* at 561 (internal quotation marks omitted) (citing cases). "[T]he burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." *Maans v. Giant of Maryland, L.L.C.*, 871 A.2d 627, 631 (Md. 2005) (internal quotation marks and citations omitted). The customer also has a duty to exercise reasonable care for her *own* safety and the invitor is not obligated to warn of an open or obvious danger. *Rybas*, 21 F. Supp. 3d at 561–62 (citing *Moulden v. Greenbelt Consumer Servs., Inc.*, 210 A.2d 724, 725 (Md. 1965); *Lexington Market Authority v. Zappala*, 197 A.2d 147, 148 (Md. 1964)).

The Estate argues that Michaels had actual knowledge of a hidden defect in the floor that constituted an unreasonable risk, citing testimony by Patrick and Erin Welsh that Michaels'

11

employees told them (1) that other people had fallen at the spot where Welsh fell and (2) that the store had planned to repair the floor weeks before Welsh's fall. Michaels objects that the siblings' testimony is hearsay and cannot be presented in a form that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2).

At least with respect to Patrick and Erin's testimony that a Michaels' manager told them that the floor was supposed to be repaired, such testimony is potentially admissible as the admission of a party-opponent's agent or employee under Fed. R. Evid. 801(d)(2)(D).[7] "Under Rule 801(d)(2)(D), a statement is not hearsay if it is offered against a party and is 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'" *Sutton v. Roth, L.L.C.*, 361 Fed App'x 543, 547 (4th Cir. 2010) (quoting *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 321 (4th Cir. 1982)). There is at least some independent evidence that the man with whom Patrick and Erin claim to have spoken following Welsh's fall was a manager and that physical repairs at the store were matters within the scope of a manager's employment at Michaels. *See Portsmouth Paving Corp.*, 694 F.2d at 321 (admission under Rule 801(d)(2)(D) requires "evidence independent of the alleged hearsay that the declarant is an agent of the party" and "establishing the existence of

---

[7] As for the statements by the employees that others had fallen at the store, the record contains no indication whether the employees had personal knowledge of these other accidents, raising the possibility that the statements contain multiple layers of hearsay. The Estate makes no effort to identify the source of the employees' knowledge of the accidents, when those accidents occurred, or whether they occurred because of the condition of the floor. Because "the record is essentially devoid of information regarding the circumstances surrounding [another] fall," the employees' statements have little probative value and are insufficient evidence for a jury to infer that Michaels had actual knowledge that the uneven flooring was a dangerous condition. *See Rybas*, 21 F. Supp. 3d at 567 (plaintiff's testimony that prior to her own fall on an allegedly wet dance floor another person fell on the floor was insufficient to show defendant knew of the condition); *Smith v. Hercules Co.*, 104 A.2d 590, 593–94 (Md. 1954) ("Evidence of other accidents, particularly where the circumstances are not identical, [has] little probative value and [is] calculated to prejudice the jury.").

the agency"). When Patrick and Erin asked the female employee if they could speak with a manager, she left and returned with a man, who appears to have had an office and the authority to show Patrick and Erin the store's video footage from the time of Welsh's fall. (ECF 102-2, E. Welsh Dep. 60:3–18).

Even assuming that the Estate would be able to establish the man was Michaels' agent, however, a statement that some repair was planned does not establish that Michaels breached any duty to Welsh. The statement is a weak indicator of Michaels' knowledge of a dangerous condition, as the record contains no evidence that any planned repairs were for the purpose of addressing a safety issue and all other evidence regarding repairs after Welsh's fall describes those repairs as "cosmetic" and not safety-related. (ECF 94-9, Edwards Dep. 35:3–20; ECF 94-8, Williams Dep. 19:10–11).

More importantly, any dangerous condition was open and obvious to Welsh. Michaels argues, and the court agrees, that any unevenness in the flooring was immediately perceptible such that Welsh must be "charged with knowledge of its existence" and deemed to have "consent[ed] to the risk." *Gellerman v. Shawan Road Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998). Numerous courts in this district have held that under Maryland law, "minor variations in ground surface generally do not amount to unreasonable risks because pedestrians customarily and ordinarily expect to encounter such variations in terrain." *Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 538–39 (D. Md. 2018) (citing cases and granting summary judgment to defendant because a 0.75 inch height differential in concrete sidewalk slabs did not pose an unreasonable risk of injury to the plaintiff and was an open and obvious risk); *Gellerman*, 5 F. Supp. at 353–54; *McManus v. Target Corp.*, CCB-18-1672, 2019 WL 1746696, *3 (D. Md. Apr. 17, 2019) (uneven sidewalk seam was an open and obvious defect and thus the

defendant did not breach its duty of care by failing to fix the uneven seam or warn the plaintiff); *Locklear v. Walmart, Inc.*, No. CV DKC 19-0659, 2020 WL 4286830, at *3 (D. Md. July 27, 2020) (defendant not liable for negligence where plaintiff tripped over a visible pothole while pushing a near empty cart). Here, the height differentials in the tiles inspected by Irwin are, at most, a quarter of an inch, and the Estate presents no evidence to rebut this.[8] Multiple witnesses, including Erin, Patrick, and Michaels' expert, Irwin, have testified that the unevenness in the floor was readily apparent and there is no evidence that anything obstructed Welsh's view as she walked through the store. *See Locklear*, 2020 WL 4286830, at *3. The court finds that as a matter of law a reasonable person in Welsh's position exercising ordinary care would have recognized the condition and accounted for it. Thus, the condition was not the kind of hazard against which Michaels was obligated to protect Welsh, and Michaels is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the court will deny the Estate's motion to remand and motion to exclude Michaels' expert and grant Michaels' motion for summary judgment. A separate order follows.

12/16/2020  
Date

/S/  
Catherine C. Blake  
U.S. District Court Judge

---

[8] The Estate maintains that the tile "contained differences in height from level at 1/4, 1/2, and 1 [inch]," citing Patrick Welsh's deposition, yet the Estate fails to attach the cited passage to its opposition. (*See* ECF 102 at 9 & n.23).